IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. KEINTZ and          :
KATHRYN I. AGNEW,             :          No.
              Plaintiffs  :
                            :
vs.                           :          Civil Action – Law
                            :          (Electronically filed)
                            :
BELRON US INC., and/or        :
SAFELITE GROUP, INC.,         :
Individually and in its/their :
capacity(ies) as Adminstrator(s) :
of The Safelite Glass Corp. Group :
Disability Income Plan, The Safelite :
Glass Corp. Group Life Insurance :
Plan, The Belron US Inc. Group :
Disability Income Plan, and/or The :
Belron US Inc Group Life Plan; :
THE BELRON US INC GROUP       :
DISABILITY INCOME PLAN;       :
THE BELRON US INC GROUP       :
LIFE PLAN; THE SAFELITE       :
GLASS CORP. GROUP             :
DISABILITY INCOME PLAN; and   :
THE SAFELITE GLASS CORP.      :
GROUP LIFE INSURANCE PLAN     :
           Defendants  :          Jury Trial Demanded

# COMPLAINT

NOW COMES Plaintiffs, Robert W. Keintz and Kathryn I. Agnew, by and through their counsel, Clark & Krevsky, LLC, who files the following Complaint:

## INTRODUCTION

1.     This is an action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 et seq., ("ERISA"), to seek declaratory and/or equitable relief as to benefits due under a group disability income plan(s) and/or a group life insurance plan(s) sponsored and/or administered by one or more Defendants, to redress breaches of fiduciary duties by one or more Defendants, and to recover all appropriate equitable relief, as well as costs and attorney's fees, to the extent permitted by ERISA.

## PARTIES, JURISDICTION & VENUE

2.     Plaintiff Robert Keintz is an adult individual residing at 2136 State Route 44, Allenwood, Union County, Pennsylvania, 17810.

3.     Plaintiff Kathryn Agnew is an adult individual residing at 2136 State Route 44, Allenwood, Union County, Pennsylvania, 17810; she is the wife of Plaintiff Robert Keintz.

4.     Defendant BELRON US INC. (hereinafter "Belron") is a corporation that does business in the Commonwealth of Pennsylvania and has an address for the service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235.

5.     Defendant SAFELITE GROUP, INC. (hereinafter "Safelite") is a Delaware corporation that for all relevant time did business in the Commonwealth of Pennsylvania and has an address for the service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235; on information and belief, Defendant Belron is the successor to Safelite.

6.     THE BELRON US INC GROUP DISABILITY INCOME PLAN (the "Belron DI Plan") is an "employee benefit plan" or "plan" as said term is defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3) and has an address for the service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235.

7.     THE SAFELITE GLASS CORP. GROUP DISABILITY INCOME PLAN (the "Safelite DI Plan") is an "employee benefit plan" or "plan" as said term is defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3) and has an address for the service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235.

8.     THE BELRON US INC GROUP LIFE PLAN (the "Belron Group Life Plan")
is believed to be an "employee benefit plan" or "plan" as said term is defined in
Section 3(3) of ERISA, 29 U.S.C. §1002(3) and is believed to have an address for the
service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235.

9.     THE SAFELITE GLASS CORP. GROUP LIFE INSURANCE PLAN (the
"Safelite Group Life Plan") is an "employee benefit plan" or "plan" as said term is
defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3) and has an address for the
service of process at 2400 Farmers Drive, Columbus, Franklin County, Ohio, 43235.

10.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 as the case arises
under and pursuant to ERISA.

11.     Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C.
§1391(d) as the facts and circumstances, acts and/or omissions, and incidents and/or
actions alleged herein took place in this judicial district.

## BACKGROUND FACTS OF PLAINTIFF'S EMPLOYMENT

12.     Plaintiff Keintz began employment for Defendant Safelite in or about April 1988.

13.     In or about March 2007, while Plaintiff Keintz was still employed by Defendant Safelite, Defendant Belron acquired Defendant Safelite.

## BACKGROUND FACTS OF THE PLANS

14.     Defendant Safelite and/or Defendant Belron offered certain benefit coverage to employees and/or their dependants, including but not limited to short term disability income coverage (the "STD Policy"), long term disability income coverage (the "LTD Policy"), and group life insurance coverage, provided through one or more group welfare plans, as described further below.

15.     Defendant Safelite served as and performed the functions of the "administrator" and "plan sponsor" of the Safelite DI Plan and the Safelite Group

Life Plan, as those terms are defined in Section 3(16)(A) and (B) of ERISA, 29 U.S.C. § 1002(16)(A) and (B).

16.     On information and belief, Defendant Belron, as successor to Defendant Safelite, serves as and performs all of the functions of "administrator" and "sponsor" of the Safelite DI Plan, the Safelite Group Life Plan, the Belron DI Plan and/or the Belron Group Life Plan (collectively, the "Plans"), as said terms are defined in Sections 3(16)(A) and (B) of ERISA, 29 U.S.C. §§1002(16)(A) and (B).

17.     At all times relevant, Defendant Belron and/or Defendant Safelite was a "fiduciary" of the Plans as said term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002 (21)(A).

18.     At all times relevant, Plaintiff Keintz was an "employee" of Defendant Belron and/or Defendant Safelite, as said term is defined in Section 3(6) of ERISA, 29 U.S.C. § 1002(6).

19.     At all times relevant, Defendant Belron and/or Defendant Safelite, was the "employer" of Plaintiff Keintz, as said term is defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

20.     At all times relevant, Plaintiff Keintz was a vested "participant" in the Plans as said term is defined in Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

21.     At all times relevant, Plaintiff Agnew was a "beneficiary" of the Safelite Group Life Plan and/or the Belron Group Life Plan as said term is defined in Section 3(8) of ERISA, 29 U.S.C. § 1002(8).

22.     Plaintiff Keintz and Plaintiff Agnew have standing to bring this action under Section 502(a) of ERISA, 29 U.S.C. § 1132(a).

## BACKGROUND OF PLAINTIFF'S MEDICAL CONDITION

23.     On or about February 8, 2007, Plaintiff Keintz was diagnosed with Lung Cancer.

24.     On or about February 24, 2007, Plaintiff Keintz had a MRI which revealed indications of spinal metastasis, which categorizes his disease as Stage IV.

25.     On or about March 30, 2007, Plaintiff Keintz informed Defendant Safelite of his medical diagnosis.

## PLAINTIFF'S EFFORT TO SEEK INFORMATION REGARDING HIS BENEFITS

26.     On or about March 30, 2007, Plaintiff Keintz spoke by phone with a Safelite human resources employee to request information regarding his employee benefits; the employee purported to direct Plaintiff Keintz to a website containing an employee handbook, except that the site was not functional.

27.     On or about April 10, 2007, Plaintiff Keintz spoke over the phone with Dawn Ferrell, Human Resource Management Systems Analyst for Defendant Safelite and/or Defendant Belron, and again requested the employee handbook.

28.     On or about April 23, 2007, Plaintiff Keintz sent an email to Ms. Ferrell, and advised her that he had not yet received the employee handbook he requested.

29.     On or about September 13, 2007, Plaintiff Keintz, through Plaintiff Agnew, sent an email to Brenda Downing, Director of Recruiting, Training and Management for Defendant Belron, and requested information regarding benefits available to Plaintiff Keintz; Ms. Downing did not directly respond to said questions, but advised Plaintiff Agnew that she was referring said questions to other employees of Defendant Belron under her supervision and/or direction.

30.    On or about September 24, 2007, Plaintiff Agnew re-sent her September 13 email to Ms. Downing and requested information on benefit enrollment as well as a draft or comparison version of benefit booklets.

31.    On or about October 4, 2007, Plaintiff Agnew sent an email to Anissa Price, Human Resource Benefits Coordinator for Defendant Belron, and advised Ms. Price that she had previously asked Ms. Downing for documentation and had yet to receive the same.

32.    On or about October 10, 2007, Plaintiff Agnew sent an email to Ms. Price and asked when Plaintiff Keintz would receive benefit information previously requested of Ms. Downing and Ms. Price.

33.    On or about October 10, 2007, Plaintiff Keintz sent an email to Ms. Ferrell asking for information on the short and long term disability benefits, including benefit calculations, that were available to him.

34.    On October 12, 2007, Plaintiff Agnew requested that Defendant Belron provide her with information regarding benefits available to Plaintiff Keintz, including but not limited to short and long term disability.

35.     As of October 29, 2007, Defendant Belron had not provided either Plaintiff the benefit information requested in paragraphs 26-34.

36.     On or about October 29, 2007, Plaintiff Keintz, Plaintiff Agnew and their attorney participated from the attorney's office in Pennsylvania, in a teleconference with Defendant Belron representatives, to obtain information from said Defendant regarding benefits available to Plaintiff Keintz, including but not limited to short-term and long-term disability.

37.     Defendant Belron's representatives in said teleconference included Ms. Price; Donna Gibson, Senior Compensation and Benefits Manager for Defendant Belron; and Cynthia Elliott, counsel for Defendant Belron; on information and belief, Belron's representatives participated in the teleconference from Belron's offices in Columbus, OH.

38.     During the teleconference, Plaintiff Keintz advised the Belron representatives that his health circumstances made it foreseeable that he may need to take a disability leave in the near future; he expressed the need to understand the disability income and life insurance death benefits available to him in such an event in order to make knowing and intelligent decisions.

39.     During the teleconference, Ms. Gibson advised Plaintiff Keintz that his benefits (which included disability benefit payments and a life insurance death benefit) would be determined by a benefits base that was derived from his actual compensation; Ms. Gibson further advised that Plaintiff Keintz' benefit base was currently $88,000, and that the base was scheduled to increase to $121,000 effective January 1, 2008.

40.     At the time of the teleconference, Plaintiff Keintz was aware that his actual compensation, which included sales commissions, was favorably affected by an increase in sales following a snow and ice storm that hit much of Pennsylvania in February 2007.

41.     During the teleconference, Plaintiff Keintz asked whether the benefit base described by Ms. Gibson would be affected by the date when Plaintiff Keintz might initiate his claim for disability benefits.

42.     In response to Plaintiff Keintz's question, Ms. Gibson specifically verified that the benefit base would increase in January 2008 as described, even if Plaintiff Keintz were to initiate a claim for disability benefits before January 1, 2008.

43.     Assured by Ms. Gibson's representation that Plaintiff Keintz could begin disability status before the end of 2007 and receive benefit increases once the increased benefit base became effective January 1, 2008, including but not limited to an increased disability benefit payment and life insurance death benefit, Plaintiff Keintz further investigated applying for disability benefits.

44.     On or about October 30, 2007, Plaintiff Keintz received an email from Belron that attached a benefit booklet; the booklet contained no description of the application of the benefit base that disputed the information conveyed to Plaintiffs in the October 29, 2007, teleconference.

45.     Plaintiff Keintz again contacted Defendant Belron on November 6, 2007, to obtain more information about his short-term and/or long-term disability benefits, and spoke by phone with Ms. Ferrell.

46.     In said November 6, 2007, phone call, Ms. Ferrell again confirmed to Plaintiff Keintz the same information previously stated by Ms. Gibson, and also stated that if Plaintiff Keintz were to opt for short term disability, his benefit rate of 60% would be applied to of an annual benefit base of approximately Eighty Eight Thousand Dollars ($88,000.00), and that after January 1, 2008, his benefit rate of 60% would be applied

to an annual benefit base of approximately One Hundred and Twenty Thousand Dollars ($120,000.00).

47.    In said November 6, 2007, phone call, Ms. Ferrell again confirmed to Plaintiff Keintz that the increase in benefit base would take effect without regard to the date that Plaintiff Keintz elected to begin disability status.

48.    On or about November 12, 2007, Plaintiff Keintz, relying upon the active and implied representations made by Ms. Gibson and the other Belron representatives on October 29, 2007 and again by Ms. Ferrell on November 6, 2007, contacted the short term disability benefits insurance company to begin the benefit process.

49.    At no time prior to Plaintiff Keintz's application for benefits did representatives of Defendants Safelite and/or Belron advise Plaintiff Keintz that the information they communicated to him on October 29, 2007, or November 6, 2007, was incorrect.

50.    Had Defendants Safelite and/or Belron advised Plaintiff Keintz that his benefits would be determined from the higher benefit base only if Plaintiff Keintz

were to apply for disability on or after a specified date, he would have waited to apply for disability leave after the higher benefit base would have been in effect.

51.    On November 27, 2007, after Plaintiff Keintz was already on disability, he spoke by phone with Ms. Ferrell, who advised Plaintiff Keintz that his then-present disability benefits were currently determined by an annual base of Eighty-Eight Thousand Ninety-Six Dollars ($88,096.00), and who revised upward the calculation of increased annual base that was to take effect January 1, 2008, to One Hundred Twenty-One Thousand Nine Hundred and Ninety-Two Dollars ($121,992.00).

52.    On November 27, 2007, Ms. Ferrell, in discussing the effective date of the increased benefit base, assured Plaintiff Keintz that Defendant Belron would send the updated amount to its insurance company "when the time came," emphasizing that Plaintiff Keintz would receive a disability benefit payment increase, that the higher life insurance death benefit would take effect, and that this action would be implemented automatically by Defendant Belron with no additional action necessary on the part of Plaintiff Keintz.

53.    In January 2008, Plaintiff Keintz did not receive a disability benefit payment increase, as previously promised.

54.    On or about January 15, 2008, Plaintiff Agnew sent an email to Ms. Ferrell asking help in understanding why Plaintiff Keintz's disability benefit payment did not increase after the scheduled January 1, 2008, increase in his benefit base. **Exhibit 1**

55.    On January 18, 2008, Plaintiff Keintz received an email from Ms. Gibson, stating "[i]f an associate is out on leave while the plan year changes they do not get the updated amount." **Exhibit 1**

56.    Ms. Gibson's email was directly contrary to guidance that she stated to Plaintiffs in the presence of Attorney Elliott and that Ms. Ferrell stated and repeated to Plaintiff Keintz.

57.    Plaintiffs Keintz and Agnew objected, through telephone calls and emails to Defendants, to the decision that Ms. Gibson's January 18 email purported to establish.

58.    Defendant Belron's counsel sent Plaintiff Keintz a letter dated April 1, 2008, which purported to render a decision as to his objections and offered Plaintiff Keintz $384.23 per week from January 1, 2008, until his short term disability period ended

or he returned to work, whichever came earlier (the "Offer"); the Offer was contingent upon Plaintiff's signing a waiver of "all federal and state claims arising out of or relating to Company-sponsored benefits," and effectively limited Plaintiff Keintz to receive the difference between the disability benefit payment amount actually paid Plaintiff Keintz and the disability benefit payment as represented to Plaintiff Keintz by Defendant's representatives, but only for the period from January 1, 2008 to May 7, 2008, and not thereafter, and further was silent as to the life insurance death benefit payable upon the death of Plaintiff Keintz. **Exhibit 2**

59.    Plaintiff Keintz did not accept the Offer.

60.    On or about July 7, 2008, Plaintiff Keintz, through his counsel, contacted Defendants' Disability Benefits Plan Administrator to appeal Defendants' decision regarding his disability benefits. **Exhibit 3**

61.    To date, Defendants have not responded to said appeal.

62.    Plaintiffs sought guidance from Defendants' benefits personnel as to their rights under the Plans.

63.     Defendants' benefit personnel therefore acted as fiduciaries to Plaintiff Keintz and Plaintiff Agnew and owed them a duty to provide truthful and accurate information.

64.     Defendants' personnel affirmatively led Plaintiff Keintz and Plaintiff Agnew to believe that Plaintiff Keintz could initiate a claim for disability benefits on or before December 31, 2007, and that if he did so, his benefit base would be revised upward on or about January 1, 2008, thereby increasing his disability benefit payments and life insurance death benefits thereafter.

## COUNT I

## ROBERT W. KEINTZ AND KATHRYN I. AGNEW V. ALL DEFENDANTS EQUITABLE ESTOPPEL PURSUANT TO 29 U.S.C. § 1132(a)(3)(B)

65.     Paragraphs 1 through 64 of this Complaint are incorporated herein by reference as if fully set forth.

66.     As set forth more fully above, Defendants as fiduciaries have made multiple material misrepresentations and assurances, and/or engaged in conduct that led Plaintiffs Keintz and Agnew to reasonably believe the following:

- that Plaintiff Keintz's benefit base would increase on or about January 1, 2008;

- that Plaintiff Keintz's increased benefit base would result in increased disability benefit payments and life insurance death benefits, beginning on or about January 1, 2008;

- that the increased benefit base would apply to disability benefit payments Plaintiff Keintz received after January 1, 2008 and life insurance death benefits payable after January 1, 2008, even if he applied for and/or began receiving disability benefits before January 1, 2008;

- that Defendants would automatically apply the increased benefit base to Plaintiff Keintz's disability benefit payments and life insurance death benefits after January 1, 2008, without regard to the date that Plaintiff Keintz applied for or began receiving disability benefits;

- that Plaintiff Keintz could elect to receive disability benefit payments at one payment amount on and before December 31, 2007, and that a new, higher, payment amount would take effect automatically on or about January 1, 2008, with no additional action on Plaintiff Keintz's behalf.

- that if Plaintiff Keintz initiated his claim for disability benefits before January 1, 2008, his disability income benefits and life insurance death

benefits would be governed by a benefit base of Eighty-Eight Thousand,

Ninety-Six Dollars ($88,096.00) through December 31, 2007, and

would be governed by a benefit base of One Hundred Twenty-One

Thousand, Three Hundred Ninety-Five Dollars ($121,395) on January

1, 2008 and thereafter.

67.    Plaintiffs Keintz and Agnew reasonably relied, to their detriment, on

Defendants' representations.

68.    Plaintiffs Keintz and Agnew have suffered exceptional circumstances as a

result of Defendants' representations.

69.    As a result of Defendants' representations, Defendants are equitably estopped

from denying Plaintiff Keintz any disability benefit payments determined from the

benefit base effective on or after January 1, 2008, and/or denying Plaintiff Agnew life

insurance death benefits determined from the benefit base effective on or after

January 1, 2008.

70.    As a further result of Defendants' actions, Plaintiffs have been denied, and continue to be denied, benefits determined from the higher benefit base to which they are equitably entitled.

71.    Defendants actions described above violate Section 502 of ERISA, 29 U.S.C. § 1132(a)(3)(B).

WHEREFORE, Plaintiffs request this Honorable Court to enter judgment in their favor and against, jointly and severally, Defendants; together with appropriate equitable relief, including interest, costs and reasonable attorney fees and such other relief that this Court deems just.

## COUNT II

**ROBERT W. KEINTZ AND KATHRYN I. AGNEW V. DEFENDANTS BELRON and SAFELITE in their Individual Capacities as Administrator of the Plans**
**BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. § 1132(a)(3)(B)**

72.    Paragraphs 1 through 71 of this Complaint are incorporated herein by reference as if fully set forth.

73.     At all time relevant hereto, Defendants acted as a fiduciary as said term is

defined in 29 U.S.C. § 1002 and other common law principles as applied by the

courts in context of such claims.


74.     In acting as a fiduciary, Defendants had a duty to communicate complete and

accurate information concerning an employee's benefits.


75.     Defendants breached their fiduciary duty by making material

misrepresentations and assurances and/or engaging in conduct that led Plaintiffs to

reasonably believe that if Plaintiff Keintz were to submit a claim for disability

benefits before January 1, 2008, then his disability income benefit payments and life

insurance death benefits would be governed by a benefit base of Eighty-Eight

Thousand, Ninety-Six Dollars ($88,096.00) through December 31, 2007, with the

same benefits governed by a benefit base of One Hundred Twenty-One Thousand,

Three Hundred Ninety-Five Dollars ($121,395) on January 1, 2008 and thereafter.


76.     Plaintiffs reasonably relied, to their detriment, on Defendants' representations.

77.    As a result of Defendants' breach of fiduciary obligations, Plaintiffs have been and continue to be denied benefits determined from the higher benefit base effective on or after January 1, 2008.

78.    Defendants actions described above violate Section 502 of ERISA, 29 U.S.C. § 1132(a)(3)(B).

WHEREFORE, Plaintiffs request this Honorable Court to enter judgment in their favor and against, jointly and severally, Defendants; together with appropriate equitable relief, including interest, costs and reasonable attorney fees and such other relief that this Court deems just.

Respectfully Submitted,

CLARK & KREVSKY, LLC


By:    s/ Frank P. Clark

Frank P. Clark
P.O. Box 1254
Camp Hill, PA 17001-1254
(717) 731-8600
Attorney I.D. No. 35443
Attorney for Plaintiffs


Dated: November 28, 2008