IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. KEINTZ, et. al.  :  4:08-CV-02153
 :
    Plaintiffs,  :  (Judge McClure)
v.  :
 :
BELRON US INC., et. al.  :
 :
    Defendants.  :

**M E M O R A N D U M**

July 28, 2009

## I. Introduction

On November 28, 2008, plaintiffs Robert W. Keintz and Kathryn I. Agnew instituted this civil action against defendants, Belron US Inc., Safelite Group, Inc., the Belron US Inc. Group Disability Income Plan, the Belron US Inc. Group Life Plan, the Safelite Glass Corp Group Disability Income Plan, and the Safelite Glass Corp Group Life Insurance Plan (collectively "the Belron defendants"). In their complaint, plaintiff's allege they are entitled to equitable relief (Count I) and breach of fiduciary duty (Count II) pursuant to 29 U.S.C. § 1132(a)(3)(B).

## II. Procedural History

On January 16, 2009, the Belron defendants filed a Motion to Dismiss. Attached to the Belron defendants' motion were copies of the insurance policies

which covered plaintiffs' claims.  Plaintiffs had not attached these policies to their complaint.  Because we did not exclude the policies defendants attached to their Federal Rule of Civil Procedure 12(b)(6) motion, pursuant to Rule 12(d) we were required to treat the motion as one for summary judgment under Rule 56.  Both parties were given an opportunity to present all material pertinent to the motion.  We also ordered the parties to address the issue of who is the plan administrator for the policies, the authenticity of the policies defendants attached, and any other information the parties found to be pertinent to a summary judgment motion.

Accordingly, defendants filed their supplemental brief on May 11, 2009 (Rec. Doc. No. 18), and plaintiffs on May 28, 2009 (Rec. Doc. No. 20).  Thus the matter is ripe for disposition.

Now, therefore, we will deny defendants' motion to dismiss, which we converted to a motion for summary judgment.

### III.  Factual Background[1]

Plaintiffs Robert Keintz and Kathryn Agnew are spouses.  In April 1998,

---

[1]Neither party has filed a statement of the material facts as required by Middle District Local Rule 56.1.  Normally we would order the parties to file these documents.  However, because the issue is whether or not plaintiffs can obtain the remedies they seek from the defendants they named, we take the facts from the complaint to provide a background to the case only.  However, this is not to be construed as a judicial finding of fact.

Keintz began working for Safelite, which was acquired by Belron in March 2007[2]. Belron offers employees and their dependents a short-term disability policy, long-term disability policy, and group life insurance. According to the complaint, Belron serves as administrator and sponsor of these plans.

In February 2007, Keintz was diagnosed with stage IV lung cancer. In March 2007, Keintz told his employer about his diagnosis. Over the next eight months, Keintz repeatedly requested benefits handbooks or booklets. It wasn't until October 29, 2007, when plaintiffs and their attorney called Belron, that Belron gave Keintz the requested information. Purportedly, Belron's benefits manager, Donna Gibson, told plaintiffs and their attorney that Keintz's benefits are determined through a "benefits base." Gibson went on to explain that Keintz's benefits base was currently $88,000 and would increase to $121,000 on January 1, 2008. Keintz asked if the benefits base would be affected by the date Keintz chose to claim the benefits. Gibson confirmed that even if Keintz filed his claim for disability benefits prior to January 2008, his benefits base would still increase in January 2008.

Keintz finally received a benefits booklet on October 30, 2007, but this

---

[2]For the purposes of the instant motion, any reference by plaintiffs in the complaint to "Safelite and/or Belron" will be shortened to "Belron."

booklet did not describe the application of the benefits base. On November 6, 2007, Keintz spoke with Dawn Ferrell, a member of Belron's human resources department. Ferrell explained that if Keintz filed a claim for short-term disability, his benefit rate of 60% would be applied to a benefit base of $88,000, and that the benefit rate of 60% would be applied to a benefit base of $121,000 after January 1, 2008. Ferrell confirmed that the increase in benefit base would take effect without regard to the date Keintz elected to file his claim for disability.

Relying on this information, Keintz began disability on November 12, 2007. On November 27, 2007, Keintz again spoke with Ferrell. Ferrell advised Keintz that his current benefits base was $88,096, and would increase to $121,992 on January 1, 2008. When Keintz did not receive an increase in his disability payment in January 2008, he emailed Ferrell to find out why, and received a response from Gibson stating that if a plan participant is out on leave while the plan year changes, he does not receive the updated amount. Keintz asserts that had he known that his benefit base would not increase on January 1, 2008, he would have waited to file his claim.

Defendants made Keintz an offer, which he did not accept. Plaintiffs appealed to the plan administrator, but have not received a response.

## IV. Standard of Review

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law. Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id, Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## V. Discussion

At issue in this motion is whether or not plaintiffs can obtain the remedies they seek from the defendants they named. Plaintiffs' complaint alleges that

Belron and Safelite, in their capacities as administrators of the plans, breached their fiduciary duty to plaintiffs. Plaintiffs' complaint further asserts that all defendants should be equitably estopped from denying plaintiffs the benefits base effective January 1, 2008 for the disability income policy and the group life insurance policy. Defendants claim that the proper defendant is Liberty Life Assurance Company of Boston ("Liberty"). Defendants admit that Belron is designated in both the Disability Income Plan and the Group Life Plan as the plan administrator, but defendants assert that Liberty actually controls the administration of benefits under the plan; thus, Liberty is the appropriate defendant.

Every employee benefit plan shall, in the written instrument, "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Fiduciary responsibility can only be enforced against a defendant who is classified as a fiduciary with respect to the wrongdoing for which the remedy is sought. Here, no party, Belron or Liberty, is named 'fiduciary' in the plan documents. However, "formally designated fiduciaries may include the plan 'administrator,' the asset trustee, and the ERISA-qualified 'investment manager.'" James F. Jorden, Waldemar J. Pflepsen, Jr., and Stephen H. Goldberg, HANDBOOK ON ERISA LITIGATION THIRD EDITION, 4-6 (Aspen Publishers 2009).

7

> [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B) [29 U.S.C. § 1105(c)(1)(B)].

29 U.S.C. § 1002(21)(A).

"ERISA broadly defines a fiduciary." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (1994). The Supreme Court has held that "one is a fiduciary to the extent he exercises any discretionary authority or control. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). "ERISA allows employers to wear two hats," and be both an employer and plan administrator. Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 133 (3d Cir. 1993). An employer can have fiduciary status solely on the basis of its role as plan administrator under ERISA. Id. "ERISA makes it clear that a fiduciary is one that maintains discretionary authority or discretionary responsibility in the administration of the plan." Curcio, 33 F.3d at 234. "ERISA defines 'administrator' as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'" Id. citing 29 U.S.C. § 1002(1)(A)(i). "The plan administrator has responsibility in the administration of the plan." Id.

8

Defendants have attached to their brief four written policies: The Group Disability Income Policy effective March 15, 2007 through April 14, 2008; The Group Disability Income Policy effective April 14, 2008 through the present; The Group Life Policy effective July 5, 2007 through April 14, 2008; and the Group Life Policy effective April 15, 2008 through the present. (Rec. Doc. Nos. 18-3, 18-4, 18-5, and 18-6). All four plans name Belron or Safelite as the sponsor and the plan administrator. (Rec. Doc. Nos. 18-3 at 46, 18-4 at 47, 18-5 at 52 and 186- at 53). However, according to the plan documents, Liberty has the sole discretion to construe the terms of the plan and determine benefit eligibility. (Rec. Doc. Nos. 18-3 at 43, 18-4 at 44, 18-5 at 48 and 18-6 at 49).

The "benefit base" and "annual earnings" at issue here are, according to the plan documents, calculated by the plan sponsor and employer, respectively. (Rec. Doc. No. 18-3 at 9, 18-4 at 10, 18-5 at 12 and 18-6 at 12). Belron is the plan sponsor and the employer responsible for calculating the benefits base and the annual earnings. The issue, then, is whether this level of involvement by Belron is significant enough for the court to find that Belron exercises discretionary control or authority such that Belron is a fiduciary.

Plaintiffs argue that the plan's delegation of responsibility for calculating the benefit base and annual earnings rises to the level of Belron's having discretionary

9

responsibility in the plan. According to plaintiffs, Belron advised them that their benefits base would increase from $88,096 to $121,992 on January 1, 2008, regardless of the date Keintz chose to elect to begin collecting disability benefits.

The plan does not describe how or when a participant's benefits base increases. It appears from the plan documents that Belron is the party responsible for determining whether or not an employee's benefits base should increase, as Belron is responsible for calculating an employee's benefits base and reporting that to Liberty. The plan does not specify that an employee collecting disability is not eligible for an increase in his or her benefits base. Either Liberty or Belron, therefore, made the determination that Keintz was not eligible for increased benefits due to an increased benefits base on or about January 1, 2008. Conspicuously absent from all of defendants' briefs is which party, Liberty or Belron, was responsible on or about January 1, 2008 for determining that Keintz was not eligible for increased benefits due to an increase in his benefits base. Did Belron submit an increased benefits base to Liberty on or about January 1, 2008, and Liberty denied the increased benefits base? Or did Belron use its discretion and decide not to submit an increased benefits base to Liberty on or about January 1, 2008? This issue is dispositive in this case. If the first situation accurately reflects what happened, then Liberty has the discretion to administer the benefits

under the plan, and is the sole plan fiduciary. However, if the second situation accurately reflects what happened, then that could mean that Belron has some discretionary authority to determine whether Keintz's (and all other plan participants) benefits base should or should not increase. This could be construed as grounds to find Belron stands in a fiduciary role in this plan.

In Defendants' brief in support of its motion to dismiss, Belron states that "Liberty did not adjust Keintz's benefits base." (Rec. Doc. No. 6 at 4). However, Belron does not explain which party, Belron or Liberty, made the decision that Keintz's benefits base would not increase. Although according to the terms of the plan, Liberty has the sole discretion to construe the terms of the plan and determine benefit eligibility, we simply do not know if Liberty was the party that determined Keintz was not eligible for an increase in benefits, or if Belron determined that Keintz was not eligible for an increase in his benefits base, thus, not submitting an increased benefits base to Liberty, thereby giving Liberty the opportunity to determine Keintz's eligibility for an increase in benefits due to an increased benefits base.

In the case at hand, only Belron stands in a position to know whether it or Liberty was responsible for determining that Keintz would not receive increased benefits based on an increased benefits base. Because Belron did not provide

11

affidavits or other documentary evidence that Liberty made this determination, we do not know if Belron has discretionary decision making authority and can not say with certainty that Belron does not stand in a fiduciary position with regard to this plan. Because we can not determine that Belron is not a fiduciary, we will deny defendants' Motion to Dismiss which we converted to a motion for summary judgment in so far as the motion was based on defendants' contention that they are the improper defendants.

Defendants next argue that plaintiffs are seeking legal, not equitable damages. We disagree. There are equitable remedies potentially available to plaintiffs if they meet their burden of proof. While these remedies may differ from the ones available had plaintiffs sued Liberty, there is precedent in the Third Circuit that leads us to the conclusion that there are forms of equitable relief available to plaintiffs should this case be resolved in plaintiffs' favor. As a result, we will deny defendants' Motion to Dismiss which was converted to a motion for summary judgment by the court.

## VI. Conclusion

For all of the foregoing reasons, defendant's Motion to Dismiss will be

denied.

                                        <u>s/ James F. McClure, Jr.</u>
                                        James F. McClure, Jr.
                                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. KEINTZ, et. al. : 4:08-CV-02153
:
      Plaintiffs, : (Judge McClure)
v. :
:
BELRON US INC., et. al. :
:
      Defendants. :

# ORDER

July 28, 2009

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

Defendants' Motion to Dismiss, which by order of this court was converted into a Motion for Summary Judgment, is DENIED. (Rec. Doc. No. 5).

                                    s/ James F. McClure, Jr.
                                    James F. McClure, Jr.
                                    United States District Judge